IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Barbara Ann Carter, | ) | Civil Action No.  2:14-cv-02107-DCN-MGB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Carolyn W. Colvin, | ) | **OF MAGISTRATE JUDGE** |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This case is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The Plaintiff, Barbara Ann Carter, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act.

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

Plaintiff was 45 years old on her alleged disability onset date of January 3, 2012. (R. at 12, 62, 155.) Plaintiff claims disability due to, *inter alia*, degenerative disc disease, degenerative joint disease, and obesity. (R. at 14.) Plaintiff has a high school education and past relevant work as a pharmacy technician. (R. at 173, 21, 35-36.)

Plaintiff filed an application for DIB on March 29, 2012. (R. at 12.) After her application was denied initially and on reconsideration, a hearing was held before an Administrative Law Judge (ALJ) on March 14, 2013. (R. at 12.) In a decision dated April 9, 2013, the ALJ found that Plaintiff was not disabled. (R. at 12-22.) The Appeals Council denied Plaintiff's request for review, (R. at 1-3), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

---

[1]  A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

In making the determination that the Plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

(1)    The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

(2)    The claimant has not engaged in substantial gainful activity since January 3, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*).

(3)    The claimant has the following severe impairments: degenerative disc disease, obesity, and degenerative joint disease (20 CFR 404.1520(c)).

(4)    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

(5)    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) except only occasional postural activities, no climbing or crawling, and must avoid concentrated exposure to work hazards.

(6)    The claimant is capable of performing past relevant work as a pharmacy technician. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

(7)    The claimant has not been under a disability, as defined in the Social Security Act, from January 3, 2012, through the date of this decision (20 CFR 404.1520(f)).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. *See* 42 U.S.C. § 423(d)(1)(A).

2

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Administration's official Listing of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents her from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See* 20 C.F.R. § 404.1520(a)(4); *see also Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if she can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. *See* SSR 82-62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). She must make a prima facie showing of disability by showing that she is unable to return to her past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983); *see also Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

Once an individual has established an inability to return to her past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. *See Grant*, 699 F.2d at 191. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *See id.* at 191-92.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner "are supported by substantial evidence and whether the correct law was applied." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Richardson v. Perales*, 402 U.S. 389 (1971); 42 U.S.C. § 405(g). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988)

(citing 42 U.S.C. § 405(g); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as:

> such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be less than a preponderance.

*Smith v. Chater*, 99 F.3d 635, 637-38 (4th Cir. 1996) (internal quotation marks and citations omitted).

Thus, it is the duty of this Court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that the Commissioner's conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## DISCUSSION

The Plaintiff contends that the ALJ erred in failing to find her disabled. Specifically, Plaintiff asserts the ALJ's "RFC and Step 4 findings are not supported by substantial evidence"; the ALJ's credibility analysis is not supported by substantial evidence; and the ALJ "improperly discounted the opinion of [Plaintiff's] treating physician." (Dkt. No. 17 at 1.)

### A.    Plaintiff's Residual Functional Capacity and Credibility

Plaintiff's contends the determination of her Residual Functional Capacity ("RFC"), and the ALJ's analysis at Step 4, are not supported by substantial evidence because, *inter alia*, the ALJ "did all he could do to minimize the objective findings of record." (Dkt. No. 17 at 11.) Plaintiff points to the ALJ's proclamation that there was no objective evidence of nerve root compression. (*Id.*) Plaintiff states, "Insofar as the ALJ failed to observe the succession of MRI reports, each affirming the findings in the last, and insofar as he stubbornly refused to find that those findings could cause [Plaintiff's] pain because they did not rise to a Listing level, the ALJ's decision does not rest on substantial evidence." (*Id.* at 12.)

Plaintiff alleges a similar error with respect to the ALJ's analysis of Plaintiff's credibility. (*Id.* at 13-14.) Plaintiff asserts that while the ALJ "unquestionabl[y] found that [Plaintiff] had

4

demonstrated an impairment capable of causing the pain alleged," the ALJ "failed to reconcile the objective findings which did support her allegations of pain including multiple positive straight leg raises, reduced range of motion, and tenderness to palpation." (*Id*. at 14.) Plaintiff states, "Here, again, the central problem is that the ALJ refused to believe that the radiographic evidence supported [Plaintiff's] complaints." (*Id*.)

After having carefully reviewed the arguments, the ALJ's decision, and the record, the undersigned agrees with Plaintiff. At Step 3, the ALJ "considered whether the claimant's back problems meet Listing 1.04." (R. at 15.) The ALJ stated, "In evaluating the claimant's impairment pursuant to Listing 1.04, I note there is **no objective medical evidence of any neurological involvement or nerve root compression** and that there is no evidence claimant is unable to ambulate effectively. (R. at 15 (emphasis added).) At Step 4, the ALJ found that Plaintiff had the RFC to "perform light work . . . except only occasional postural activities, no climbing or crawling, and must avoid concentrated exposure to work hazards." (R. at 16.) The ALJ stated,

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

(R. at 17.) The ALJ noted Plaintiff's April 2011 MRI as follows:

> An MRI demonstrated degenerative disc and facet joint disease within the lower lumbar spine at L4-L5 and L5-S1 level, with an annular tear associated with a focal protrusion at L4-L5 projecting into the left lateral recess, and **the left L5 nerve root was compressed** between the mildly hypertrophic facet and the protruding disc. (Exhibit 1F)

(R. at 17 (emphasis added).) Thus, on the one hand, the ALJ stated there was "no objective medical evidence of . . . nerve root compression," and on the other stated the April 2011 MRI showed that "the left L5 nerve root was compressed." (*See* R. at 15, 17.) Additionally, as described below, the ALJ again notes, in evaluating Dr. Haskins' opinion, that "there was no actual nerve compression." (*See* R. at 21.)

5

The ALJ noted that Plaintiff began seeing Dr. Forrest in September of 2011, and Dr. Forrest ordered an updated MRI. (R. at 17-18.) The ALJ noted Dr. Forrest's treatment record dated September 21, 2011 "noted that the claimant's updated MRI revealed more evident abnormalities, and opined that L4-L5 was causing the majority of her symptoms, although a protrusion with annular tear on the left side at L3-4 was noted." (R. at 18.) The ALJ further noted Plaintiff's return visit to Dr. Forrest on September 29, 2011 "on an emergent basis," during which Plaintiff "reported that she did well following the injection combination . . . [but] two days previously . . . experienced a prominent onset of pain." (R. at 18.) Dr. Forrest ordered an EMG, nerve conduction study, and a new MRI after noting that "he would not have expected the claimant's pain symptoms to become so prominent." (R. at 18.) The ALJ's decision further states,

> Dr. Forrest's treatment notes dated October 5, 2011 indicated that the EMG and nerve conduction study of the lower left extremity showed no evidence of radiculopathy, however, he did not find an alternative explanation such as neuropathy or plexopathy, and therefore opined it was still likely that the claimant's pain was coming from her back. Dr. Forrest noted that her pain would be on the basis of radiculitis and not radiculopathy. Dr. Forrest noted that the updated MRI showed no changes. Dr. Forrest opined that the claimant's sudden increase in pain a week after her injections was unusual, however, there were no findings to indicate any structural worsening or new problems. The claimant reported that her pain had improved from an 8 to a 5. . . .

(R. at 18.)

The ALJ then noted the opinion of Dr. Schaefer, a consultative examiner who evaluated the Plaintiff on July 3, 2012. (R. at 19.) As to Dr. Schaefer, the ALJ stated,

> Dr. Shaefer [sic] noted that an MRI showed moderate degenerative changes, including multilevel disc protrusions without any actual nerve compression. Dr. Schaefer noted that orthopedic examination was very notable for minimal to no positive findings. . . . Dr. Schaefer concluded that there were no physical or diagnostic imagining [sic] tests or nerve conduction tests that indicated any substantive medical problems to explain the claimant's low back pain. (Exhibit 8F)

(R. at 19.)

The ALJ further stated,

> Pursuant to Social Security Ruling 96-6p and 20 C.F.R. §§ 404.1527(f) and 416.927(f), I have considered the findings of fact made by state agency medical consultants and other program physicians regarding the nature and severity of the

claimant's physical impairment. Some weight is accorded to the above stated opinions of the claimant's treating physician, Dr. Curtis Haskins, however, Dr. Haskins's limitations appear to be based on the claimant's subjective complaints, and the objective medical evidence in the record does not support the severity of Dr. Haskins's opinion. Specifically, Dr. Haskins's treatment notes report tender paralumbar tissues and negative straight leg raises with an otherwise normal exam. (Exhibit 10F) The EMG and nerve conduction study of the claimant's lower left extremity found no evidence of radiculopathy, no lumbar plexopathy on the left, and no evidence of peripheral compressive neuropathy affecting the lower extremities. **Although the MRIs revealed multilevel disc protrusion, there was no actual nerve compression.** (Exhibit 2F) This objective evidence does not support Dr. Haskins's findings that the claimant could not work eight hours or would miss four days of work a month. Significant weight is accorded to consultative examiner Dr. Marcus Shaeffer [sic], as the objective medical evidence of record and physical examination supports his opinions, however, I have found the claimant to be more limited than opined by Dr. Shaefer [sic].

. . .

In sum, the above residual functional capacity assessment for less than the full range of light work is supported by the medical evidence of record. However, due to the claimant's extensive activities of daily living, lack of medical evidence, and inconsistencies in the record, I cannot find the claimant's allegations that [s]he is incapable of all work activity to be fully credible.

(R. at 20-21 (emphasis added).)

Plaintiff complains about the ALJ's lack of discussion of the September 2011 MRIs. Dr. Holgate's report from Plaintiff's September 15, 2011 MRI indicates as follows with respect to L4-5: "Signal loss, mild facet arthropathy and a shallow protrusion of disc material with an annular tear on the left. There is contact with the right and minimal displacement of the left L5 nerve roots." (R. at 241.) The "opinion" section of the report states, "MRI of the lumbar spine including 3D myelotomographic images and multiplanar reformations show multilevel mild-to-moderate c noncompressive spondylosis. **There is _probable_ nerve root compression on the left at L4-5.**" (R. at 241 (emphases added).) The "opinion" section of the MRI report dated September 29, 2011 similarly states: "MRI of the lumbar spine including 3D myelotomographic images and multiplanar reformations is multilevel mild-to-moderate spondylosis with annular tears and **_potential_ nerve root**

**compression identified at L4-5 and L5-S1**. Slice by slice comparison with the previous examination of 9/15/11 reveals no material difference." (R. at 242 (emphases added).)

The undersigned agrees with Plaintiff that much of the ALJ's decision rests on the lack of "actual nerve compression." (*See, e.g.*, R. at 21, 15.) The problem with the ALJ's assertion that there is no evidence of nerve root compression is that the record does, in fact, contain such evidence. As noted above, on the one hand the ALJ noted the "left L5 nerve root was compressed" and on the other stated there was no evidence of actual nerve compression. (R. at 17, 21.) Furthermore, while the ALJ clearly noted that the Plaintiff had two MRIs in September of 2011, he did not note or discuss the fact those two MRIs indicated "probable" and "potential" nerve root compression. (*See* R. at 241-42; *see also* R. at 18.) It is clear that the ALJ credited Dr. Schaefer's opinion that an MRI "on October 5, 2011 [sic] . . . showed moderate degenerative changes, which included multilevel disk [sic] protrusions without any actual nerve compression." (R. at 395; *see also* R. at 19, 21.)[2] But the ALJ did not discuss why he discredited Dr. Goltra's opinion that Plaintiff's "left L5 nerve root is compressed," (*see* R. at 222), which the undersigned concludes is significant given that (a) the ALJ heavily relied on this alleged lack of objective medical evidence in assessing Plaintiff's credibility and RFC; (b) the ALJ heavily relied on this alleged lack of objective medical evidence in rejecting Dr. Haskins' opinion (which relied, at least in part, on the April 2011 MRI) (*see* R. at 420); and (c) Dr. Goltra's opinion is consistent with the September 2011 MRI reports indicating "probable" and "potential" nerve root compression.[3]

As the Fourth Circuit stated in *Gordon v. Schweiker*, 725 F.2d 231 (4th Cir. 1984) the court "cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence." *Gordon*, 725 F.2d at 235-36 (citations

---

[2]Indeed, the ALJ nearly lifted the language from Dr. Schaefer's report; the ALJ references Exhibit 2F in stating, "Although the MRIs revealed multilevel disc protrusion, there was no actual nerve compression." (R. at 21; *see also* R. at 395.)

[3]It is also not clear to the undersigned whether Dr. Schaefer reviewed the April 2011 MRI, which Dr. Goltra stated revealed nerve root compression. (*See* R. at 395-97, 222.)

omitted). Here, however, it is not clear to the undersigned that the ALJ considered all the relevant evidence, nor does the ALJ's decision address the inconsistency regarding the evidence of nerve root compression; the undersigned therefore recommends a remand. *See* SSR 96-8p, 1996 WL 374184, at *2 ("RFC is assessed by adjudicators at each level of the administrative review process based on all of the relevant evidence in the case record . . . ."); *see id*. at *7 ("The adjudicator must . . . explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."); *see also Arnold v. Secretary*,  567 F.2d 258, 259 (4th Cir. 1977) ("Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole. . . . (internal quotation marks and citation omitted)); *Murphy v. Bowen*, 810 F.2d 433, 437 (4th Cir. 1987) (remanding the case to the Agency because the law judge did not credit one doctor's views over those of another doctor); *Lane–Rauth v. Barnhart*, 437 F.Supp.2d 63, 67 (D.D.C. 2006) (remanding case where ALJ simply listed all the evidence without explaining which evidence led him to his conclusion or why he discounted contrary pieces of evidence).

Plaintiff's credibility arguments–though based heavily on the nerve root compression issue–were not based solely on that one issue. Plaintiff also argues that the ALJ erred in finding Plaintiff's daily activities "are inconsistent with her allegations of such significant functional limitations, but are fully consistent with the residual functional capacity described." (Dkt. No. 17 at 15.) Plaintiff states, "It is hard to argue that dressing oneself, reading, playing on a computer, or watching television are consistent with a substantial range of light work." (*Id*.)

Certainly daily activities are a relevant component of credibility analysis. *See, e.g., Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005) (noting that a claimant's routine activities including reading, cooking, attending church, cleaning house, doing laundry, and visiting were inconsistent with her complaints). Here, however, the ALJ concluded that Plaintiff "has the residual functional

capacity to perform light work as defined in 20 CFR 404.1567(b) except only occasional postural activities, no climbing or crawling, and must avoid concentrated exposure to work hazards." (R. at 16.)

Social Security Ruling 96-8p provides guidance in assessing Residual Functional Capacity; that ruling states,

> Ordinarily, RFC is the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing basis**, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. RFC does not represent the *least* an individual can do despite his or her limitations or restrictions, but the *most*.

SSR 96-8p, 1996 WL 374184, at *2 (emphases in original)). The section of the ALJ's opinion concerning Plaintiff's daily activities is as follows:

> At the hearing, the claimant testified that she has not work[ed] since January 2012. . . . She tries to do household chores, but after 20-30 minutes she has to stop. . . .She spends her day reading, watching television, and using the computer. She does not have any social activities, but she sees her family once or twice a week. She will go grocery shopping with her husband or her parents. She has a driver's license but does not drive. . . .
>
> . . .
>
> The claimant's activities of daily living are inconsistent with her allegations of such significant functional limitations, but are **fully consistent with the residual functional capacity described above**. The claimant can drive a car, dress herself, perform some household chores, and shop for her own personal needs. She also stated that she reads, plays on the computer, watches television and visits with her family.

(R. at 17 (emphasis added).) The ALJ found stated that he could not "find the claimant's allegations that [s]he is incapable of all work activity to be fully credible" due to "claimant's extensive activities of daily living, lack of medical evidence, and inconsistencies in the record." (R. at 21.)

Respectfully, it is not clear to the undersigned how Plaintiff's ability to dress herself and perform thirty minutes of household chores before stopping supports a finding that Plaintiff is able to "stand[] or walk[], off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6; *see also* SSR 96-8p, 1996 WL 374184, at *2 ("Ordinarily, RFC is the

individual's *maximum* remaining ability to do <u>sustained</u> work activities in an ordinary work setting on a **regular and continuing basis**, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." (underlining added)). Given the ALJ's erroneous reliance on the "lack of medical evidence" and "extensive activities of daily living" in concluding the Plaintiff was not "fully credible," the undersigned concludes the ALJ's decision is not supported by substantial evidence and therefore recommends remand.

**B.**     **Remaining Allegations of Error**

Because the Court finds the ALJ's analysis of Plaintiff's credibility and RFC to be sufficient bases to remand the case to the Commissioner, the Court declines to specifically address Plaintiff's additional allegations of error by the ALJ. However, upon remand, the Commissioner should take into consideration Plaintiff's remaining allegation of error: "[t]he ALJ improperly discounted the opinion of [Plaintiff's] treating physician." (Dkt. No. 17 at 16.)

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. Section 405(g) for further proceedings as set forth above.

IT IS SO RECOMMENDED.

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

January 20, 2016
Charleston, South Carolina